**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-1750**

———————

JUDY L. MOON, individually; JUDY L. MOON, Executor of the
Estate of Leslie W. Moon,

        Plaintiffs - Appellants,

     v.

BWX TECHNOLOGIES, INCORPORATED; MCDERMOTT INTERNATIONAL,
INCORPORATED; THE BABCOCK & WILCOX COMPANY; BABCOCK & WILCOX
POWER GENERATION GROUP, INCORPORATED,

        Defendants - Appellees.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg.  Norman K. Moon, Senior
District Judge.  (6:09-cv-00064-NKM)

———————

Argued: September 20, 2012      Decided: December 3, 2012

———————

Before MOTZ, AGEE, and THACKER, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

———————

Sidney Harold Kirstein, Lynchburg, Virginia, for Appellants.
Joseph Michael Rainsbury, LECLAIRRYAN, PC, Roanoke, Virginia,
for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Judy L. Moon ("Appellant"), executor of the estate of Leslie W. Moon, appeals the district court's denial of her motion to remand and the subsequent order dismissing her suit. Appellant argues that her purported "state law" claims merely seek a one-time recovery from Appellees based on an alleged independent contract for benefits and thus do not fall under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1001 et seq. This argument cannot succeed. Because Appellant's claims, which were initially brought in state court, are essentially mislabeled federal claims that fall within the broad scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), her suit was properly removed to federal court and the motion to remand to state court was properly denied. We also conclude the district court was correct in deciding that the life insurance plan language at issue unambiguously bars Appellant's claim for benefits on its terms.

However, because the district court relied on a now-superseded opinion of this court, McCravy v. Metropolitan Life Insurance Co., 650 F.3d 414 (4th Cir. 2012) (McCravy I), superseded by McCravy v. Metropolitan Life Insurance Co., 690 F.3d 176 (4th Cir. 2012) (McCravy II), in addressing Appellant's claims based on equitable estoppel and breach of fiduciary duty, and particularly in light of CIGNA Corp. v. Amara, ___ U.S. ___,

2

131 S. Ct. 1866, 179 L.Ed.2d 843 (2011), we vacate the order of dismissal and entry of final judgment and remand for further proceedings.

## I.

Mr. Moon, now deceased, had been a full-time employee of Appellee BWX Technologies, Inc. ("BWX") and its predecessor corporations from 1969 until June 2005. Beginning June 1, 2005, Mr. Moon was medically unable to continue working due to a severe heart condition and went on short term disability, the payments of which lasted until November 30, 2005. He later applied for long-term disability, which was approved on December 1, 2005, and Mr. Moon retired from employment with BWX as of that date.

At some point during his employment in 2005, BWX offered Mr. Moon a selection of employee group benefits, including life insurance, which would be effective at the start of 2006. The enrollment period occurred in the fall while Mr. Moon's application for long-term disability benefits was pending. He elected to enroll in various employee benefits by completing a "FlexChoice Decision Worksheet" ("2005 Decision

Worksheet"), dated October 17, 2005.[1]  Relevant here, Mr. Moon opted for "employee life insurance" valued at $200,000 -- the same amount he had elected the previous year.  The coverage was to become effective January 1, 2006.  BWX verified Moon's selection in a November 29, 2005, Confirmation Statement ("2005 Confirmation Statement").

The 2005 Confirmation Statement, issued only days before Mr. Moon went on long-term disability and retired, identifies the relevant coverage as "Employee Life Insurance" under the heading "Plan Name."  The overall group insurance plan used by BWX, titled "Group Insurance Plan for Employees of McDermott Incorporated and Participating Subsidiary and Affiliated Companies," incorporates by reference certain other insurance policies, including a life insurance plan ("Plan") issued by Metropolitan Life Insurance Company ("MetLife"), which is the policy at issue in this case.  The Plan is an ERISA-qualified life insurance plan for BWX employees administered by MetLife.

On January 13, 2006, BWX printed, and Mr. Moon sometime thereafter received, a second benefits confirmation

---

[1] The 2005 Decision Worksheet was printed on October 17, 2005.  It is unknown when Mr. Moon completed the form, though it must be assumed that he did so prior to the creation of the 2005 Confirmation Statement that verified his selections on November 29, 2005.

statement ("2006 Confirmation Statement") confirming Mr. Moon had chosen benefits effective January 2, 2006, including a $200,000 life insurance benefit.[2] Of note, the 2006 Confirmation Statement incorrectly states that Mr. Moon was not disabled and appears to refer to him as an "employee," despite the fact that Mr. Moon retired from BWX and went on long term disability as of December 1, 2005.

Mr. Moon and his family paid some, though not all, of the premiums set forth in the 2006 Confirmation Statement. The Moons paid the premiums directly to BWX during 2006. BWX accepted the payments without objection.

On November 18, 2006, Mr. Moon passed away. The 2006 premium payments at the time of Mr. Moon's death were in arrears: On November 29, 2006, Appellant sent a letter to BWX and enclosed a check for $1,173.36, paying the entire balance due on Mr. Moon's benefits.

Following the death of her husband, Appellant made a claim directly to BWX requesting payment of the $200,000 life insurance benefit. BWX denied her claim by letter dated April

---

[2] BWX suggested that the 2006 Confirmation Statement was sent due to a change in the amount of the premium since the time the 2005 Confirmation Statement had been issued. The 2006 Confirmation Statement indicated a net cost to Mr. Moon for all benefits of $3,269.76. This reflected an increase of $2.52 from the 2005 Confirmation Statement. Relevant here, the cost for the life insurance coverage remained unchanged at $804.

12, 2007, which stated Mr. Moon had lost his employee group life insurance benefit when he became unable to work after November 2005. BWX further contended that Mr. Moon failed to convert his group employee policy with MetLife after he ceased working for BWX as required by the Plan.[3]

On November 10, 2009, Appellant filed this action in Lynchburg City Circuit Court. She alleged in the original complaint that Mr. Moon and Appellees made an independent post-employment contract for life insurance benefits by way of the 2006 Confirmation Statement, and that Appellees, not MetLife, had an obligation to pay the $200,000. Appellees timely removed, asserting federal question jurisdiction under ERISA. Appellant moved to remand. The district court referred the motion to a magistrate judge, who issued a report and recommendation ("R&R") advising that remand be denied. The district court agreed and adopted the R&R in part, concluding, "the record makes clear that plaintiff's claim under the

---

[3] As explained below, the Plan states that if the insured becomes totally disabled, he "may continue life insurance coverage . . . by making payment directly to the insurance company." J.A. 194-95. Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

allegedly independent benefits agreement is in substance an attempt to recover under the group life plan." (J.A. 143).[4]

In support of its conclusion, the district court found (1) the benefits were of the sort offered by an acknowledged benefits plan; (2) the claimed benefits amount was identical to that offered under the employee life insurance plan; and (3) the document on which plaintiff relied for her independent agreement argument -- the 2006 Confirmation Statement -- actually undermines her claims, as it clearly relates to various employee plan benefits. The district court thus concluded, "although the form of the pleadings suggests otherwise, the substance of Moon's claim is revealed as an attempt to vindicate rights under the group life plan." (J.A. 143-44). Therefore, the district court found federal jurisdiction proper.

After the district court denied remand, Appellant filed an amended complaint containing four counts, styled 1) "breach of contract," 2) "breach of implied or quasi-contract," 3) "estoppel," and 4) "negligent breach of ERISA duties." (J.A. 147-57). Appellees moved to dismiss the amended complaint

---

[4] The district court rejected the magistrate judge's R&R to the extent that it found that the 2006 Confirmation Statement constituted an "informal plan" and thus any action to enforce it fell under ERISA. Instead, as noted above, the district court rested its holding on the basis that the alleged independent benefits agreement was "related to" the group plan and was thus preempted.

7

pursuant to Rule 12(b)(6). The district court heard oral argument, and on July 7, 2011, dismissed the amended complaint. The district court rejected Appellant's contract claim because the MetLife Plan unambiguously excluded coverage where, as here, the decedent was not engaged in active work during the month in which he died. It rejected the quasi-contract claim because ERISA already provided a mechanism for Appellant to recover any benefits to which she was entitled. It rejected Appellant's estoppel claim, as equitable estoppel generally is unavailable to modify the terms of an ERISA plan -- even where, as here, the employer accepted premium payments. And it rejected the negligent breach-of-ERISA-duties claim because, among other things, the remedy sought was essentially a request for contract damages and was not available in equity. See Moon v. BWX Technologies, Inc., No. 6:09-cv-00064, 2011 WL 2670075 (W.D. Va. July 7, 2011). Moon now appeals.

## II.

We review de novo questions of subject matter jurisdiction, "including those relating to the propriety of removal." Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999). The burden of demonstrating jurisdiction resides with "the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). We also review de novo

8

a Rule 12(b)(6) dismissal for failure to state a claim. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

III.

A.  Motion to Remand

In Appellant's view, the 2006 Confirmation Statement was an offer of benefits unrelated to any ERISA plan that BWX made directly to Mr. Moon in his post-employment capacity, and which was accepted by his subsequent payment of premiums.  As Moon's argument goes, this alleged independent contract for benefits is not an employee benefit plan and thus cannot be preempted by ERISA.  However, Appellant has blurred crucial distinctions between the two types of preemption contemplated by ERISA: ordinary conflict preemption and complete preemption.

1.

Ordinary conflict preemption under ERISA § 514 is set forth in 29 U.S.C. § 1144(a): state laws are superseded insofar as they "relate to" an ERISA plan.  Id.[5]  "Thus, when presented

---

[5]  Section 1144(a) reads as follows: "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."
"A state law claim 'relates to' an ERISA plan . . . 'if it has a connection with or reference to such a plan. . . .'" Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1480 (4th Cir. (Continued)

9

with claims under state law that are said to implicate ERISA, a court (be it state or federal) must determine whether the claims are preempted by ERISA § 514." Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 187 (4th Cir. 2002). "But 'ERISA pre-emption [of a state claim], without more, does not convert a state claim into an action arising under federal law.'" Id. (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987)). In short, "when ERISA is simply asserted as a defense to a state law claim, the state claim is not converted into a federal claim, and there is no federal question giving rise to removal jurisdiction." Darcangelo, 292 F.3d at 187.

In contrast, "complete preemption" does give rise to removal jurisdiction. Properly understood as a jurisdictional doctrine, complete preemption arises only when plaintiff's state law claims come within the scope of ERISA's civil enforcement provision, found at § 502(a) of the Act and codified at 29 U.S.C. § 1132(a). See Taylor, 481 U.S. at 65-66. Thus, if Appellant's claims are essentially § 502(a) claims brought under the guise of state law, ERISA completely preempts the purported state law claims and converts them into what they actually are:

---

1996) (en banc) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)).

10

federal claims.  See Taylor, 481 U.S. at 65-66.[6]  Section 1132(a)

authorizes plan participants or beneficiaries "to file civil

actions to, among other things, recover benefits, enforce rights

conferred by an ERISA plan, remedy breaches of fiduciary duty,

clarify rights to benefits, and enjoin violations of ERISA."

Marks v. Watters, 322 F.3d 316, 323 (4th Cir. 2003); see 29

U.S.C. §§ 1132(a)(1)-(4).

2.

Appellant contends the district court should have

ordered remand because her claims are not completely preempted

by the ERISA civil enforcement provision, § 502(a).  See 29

U.S.C. 1132(a).  Our circuit has recognized three "essential

requirements" for complete preemption:

> (1) the plaintiff must have standing under § 502(a) to
> pursue its claim; (2) its claim must "fall[ ] within
> the scope of an ERISA provision that [it] can enforce
> via § 502(a)"; and (3) the claim must not be capable
> of resolution "without an interpretation of the
> contract governed by federal law," i.e., an ERISA-
> governed employee benefit plan.

---

[6] "In cases of complete preemption, . . . it is misleading to say that a state claim has been 'preempted' as that word is ordinarily used.  In such cases, in actuality, the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute."  King v. Marriott Int'l., Inc., 337 F.3d 421, 425 (4th Cir. 2003).  In this way, "the doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule: because the state claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint."  Darcangelo, 292 F.3d at 187 (citing Taylor, 481 U.S. at 63-65).

11

<u>Sonoco Products Co. v. Physicians Health Plan, Inc.</u>, 338 F.3d 366, 372 (4th Cir. 2003) (adopting test from <u>Jass v. Prudential Health Care Plan, Inc.</u>, 88 F.3d 1482, 1487 (7th Cir. 1996)).

a.

We turn first to the issue of statutory standing under ERISA. Aside from the types of claims that may properly be pursued under ERISA, § 502(a) also specifies the parties entitled to assert those claims. In particular, "participants" and "beneficiaries" are among the classes of persons entitled, under § 502(a), to bring several causes of action permitted under ERISA. A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The parties do not dispute that Mr. Moon designated Appellant as the recipient of his alleged life insurance benefits. However, a party such as Appellant can demonstrate that she "may become entitled to a benefit," and therefore be considered a "beneficiary" for jurisdictional purposes, only if she can show that at the time she filed suit she had a colorable claim to benefits. See <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 116-18 (1989).

We have previously said, "[w]hether an employee has standing as a 'participant' depends, not on whether he is

12

actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits." Davis v. Featherstone, 97 F.3d 734, 736 (4th Cir. 1996) (quoting Abraham v. Exxon Corp., 85 F.3d 1126, 1129 (5th Cir. 1996)); see also In re Mutual Funds Investors Litig., 529 F.3d 207, 214 (4th Cir. 2008). The test for a colorable claim is "'not a stringent one.'" Featherstone, 97 F.3d at 737 (quoting Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790 (7th Cir. 1996)). A claim is colorable if it is "arguable and nonfrivolous, whether or not it would succeed on the merits." Id. at 737-38 (citing Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991)). We find that because Appellant's claims are plainly arguable and nonfrivolous, she has statutory standing under ERISA § 502(a).

b.

The second requirement for complete preemption is that at least one of Appellant's claims must fall within the scope of ERISA's civil enforcement provision, § 502(a). See Sonoco Products, 338 F.3d at 372. Appellant's claim for benefits undoubtedly falls within this ambit inasmuch as she seeks, in the main, to recover benefits allegedly owed to her based on the disputed coverage documents. See 29 U.S.C. § 1132(a)(1)(B) (providing that a civil enforcement action under ERISA may be

13

brought, for among other reasons, "to recover benefits due to him under the terms of his plan").

### c.

The final requirement for complete preemption is likewise easily met: Appellant's claim must not be capable of resolution without an interpretation of the ERISA-governed employee benefit plan. See Sonoco Products, 338 F.3d at 372. Despite Appellant's assertion that her claims arise from an independent contract for life insurance benefits, the entirety of the record makes clear that if Mr. Moon were eligible for life insurance coverage at all, it would be according to the terms of the employee-sponsored plan that he selected upon completing the 2005 Decision Worksheet.

Accordingly, the district court did not err in determining that Appellant's purported state law claims are actually disguised federal claims arising under ERISA's civil enforcement provision. Removal jurisdiction was thus proper.

### B.  Motion to Dismiss

We now turn to Appellant's contention that the district court erred by dismissing her claims based on Federal Rule of Civil Procedure 12(b)(6).

### 1.

As noted above, Appellant rests many of her arguments on the inaccurate premise that her claims arise from an

independent contract for benefits made between her deceased husband and BWX, as purportedly demonstrated by the 2006 Confirmation Statement and her payment of "premiums" made directly to BWX during 2006. In fact, Mr. Moon selected employee benefits, including the disputed life insurance coverage, while still an employee at some point prior to November 29, 2005, the date on which BWX confirmed Mr. Moon's selected coverage. Far from indicating an independent, post-employment contract for benefits, the documents on which Appellant relies all plainly demonstrate that her claims stem from nothing more than Mr. Moon's enrollment in a run-of-the-mill employee benefit plan weeks before his retirement. Accordingly, Appellant's claims for an entitlement to benefits are governed by the language of the Plan.

It is undisputed that life insurance coverage under the Plan continued only while the employee remained in "Active Work." (J.A. 238). The plan language then states, "All of your benefits will end on the last day of the calendar month in which your employment ends. Your employment ends when you cease Active Work as an employee." (J.A. 238). The Plan defines "Active Work" as "performing all of the material duties of your job with the Employer where those duties are normally carried out." (J.A. 238). An employee like Mr. Moon who was on total disability was thus ineligible for benefits under the Plan as of

15

the date of his retirement on December 1, 2005. The Summary Plan Description relates this fact in straightforward language. Under the heading, "If You Become Disabled," it states that an employee loses life insurance coverage when he ceases to be an active employee due to a disability: "If, while insured, you become totally disabled and are unable to work, your life insurance coverage will end. However, you may continue life insurance coverage for you and your covered dependents by making payment directly to the insurance company . . . ." (J.A. 195). In this way, a disabled employee who wished to continue his life insurance under the Plan was required to convert to an individual plan and to arrange to pay MetLife directly. Mr. Moon failed to do so.

At the latest, Mr. Moon ceased any involvement in "Active Work" when he retired on December 1, 2005 -- at least a month before the disputed coverage purportedly went into effect. Because Mr. Moon was clearly never eligible for benefits under the Plan during 2006, Appellant cannot recover under the Plan's plain terms.

2.

The merits of Appellant's equitable estoppel and breach of fiduciary duty claims are less clear. Under ERISA, 29 U.S.C. § 1132(a)(3) empowers beneficiaries "to obtain other appropriate equitable relief" to redress violations of ERISA or

16

ERISA plans.  In this regard, the United States Supreme Court in CIGNA Corp. v. Amara, ___ U.S. ___, 131 S. Ct. 1866, 179 L.Ed.2d 843 (2011), has "clarified that remedies beyond mere premium refunds -- including the surcharge and equitable estoppel remedies . . . are indeed available to ERISA plaintiffs suing fiduciaries under Section 1132(a)(3)."  McCravy II, 690 F.3d at 182-83 (internal quotation marks and citation omitted).[7]

Amara was decided on May 16, 2011.  On the same day, and without the guidance of Amara, our court decided McCravy I, 650 F.3d 414.  In McCravy I, we affirmed a decision that had foreclosed a plaintiff's available remedies under ERISA, finding that § 1132(a)(3) did not allow for surcharge and equitable estoppel.  We reversed ourselves in McCravy II in light of the Amara decision.  See McCravy II, 690 F.3d at 181-83.

In this case, the district court's memorandum opinion and order, entered July 7, 2011 (after Amara and McCravy I, but before McCravy II), dismissed Appellant's claims for recovery based on, among other things, "estoppel" and "negligent breach of ERISA duties."  (J.A. 154-55).  In so doing, the district court heavily relied on language from the now-superseded McCravy I as well as several cases whose holdings may require

---

[7] Surcharge is defined as "[t]he amount that a court may charge a fiduciary that has breached its duty." Black's Law Dictionary 1579 (9th ed. 2009).

17

reexamination in light of Amara. See e.g., Moon, 2011 WL 2670075, at *4-5 (explicitly relying on McCravy I in holding, "[d]efendants' acceptance of premium payments does not change the analysis" as to equitable estoppel and observing that the "reasoning [from McCravy I] applies with equal force here"); see also id. at *5-6 (concluding that Appellant may not recover plan benefits as "other appropriate equitable relief" for breach of fiduciary duty, citing McCravy I).

In view of the district court's substantial reliance on McCravy I, we believe the better course is to remand the case to permit the district court to address anew Appellant's claims of equitable estoppel and breach of fiduciary duty in light of Amara and McCravy II. Whether these claims will ultimately succeed in the circumstances of this case are questions appropriately resolved in the first instance before the district court.

## IV.

For the foregoing reasons, we affirm the district court's order denying Appellant's motion to remand, vacate the district court's memorandum opinion and order entered July 7,

18

2011, and remand the case to the district court for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>