**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1888**

JUDY L. MOON, individually; JUDY L. MOON, Executor of the
Estate of Leslie W. Moon,

            Plaintiffs – Appellants,

        v.

BWX TECHNOLOGIES, INCORPORATED; MCDERMOTT INTERNATIONAL,
INCORPORATED; BABCOCK & WILCOX COMPANY; BABCOCK & WILCOX
POWER GENERATION GROUP, INCORPORATED,

            Defendants – Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg.  Norman K. Moon, Senior
District Judge. (6:09-cv-00064-NKM-RSB)

Argued: May 13, 2014                 Decided: July 2, 2014

Before MOTZ, AGEE, and THACKER, Circuit Judges.

Affirmed and remanded with instructions by unpublished per
curiam opinion.

**ARGUED**: Sidney Harold Kirstein, Lynchburg, Virginia, for
Appellants.  Joseph Michael Rainsbury, LECLAIRRYAN, Roanoke,
Virginia, for Appellees. **ON BRIEF**:  Kevin P. Oddo, LECLAIRRYAN,
Roanoke, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Judy L. Moon, individually and as executor of the estate of Leslie W. Moon ("Appellant"), appeals the district court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by BWX Technologies, Inc. ("BWXT"), McDermott International, Inc., Babcock & Wilcox Power Generation Group, Inc., and Babcock & Wilcox Company (collectively, "Appellees").[1] Appellant also appeals the district court's denial of her motion for leave to file a second amended complaint.

Because Appellant has failed to sufficiently allege that Appellees were acting as fiduciaries under the Employee Retirement Income Security Act ("ERISA") at the time of their allegedly wrongful conduct, we conclude that Appellant has failed to state a claim for breach of fiduciary duty and equitable estoppel. Similarly, with respect to Appellant's motion for leave to file a second amended complaint, the fact that Appellees were not ERISA fiduciaries renders Appellant's proposed amendment futile. Therefore, we affirm the district court's orders and, for the reasons stated below, remand with instructions.

---

[1] Babcock & Wilcox Power Generation Group, Inc. and Babcock & Wilcox Company are predecessor companies to BWXT, and BWXT is a subsidiary of McDermott International, Inc.

2

I.

A.

We set forth the factual underpinning of this case in detail in our previous opinion disposing of the initial appeal in this case. See Moon v. BWX Techs., Inc. ("Moon I"), 498 F. App'x 268, 270-72 (4th Cir. 2012). Therefore, we provide only a brief recitation of the relevant facts here.

Appellant is the widow of Leslie Moon ("Mr. Moon") and is the executor of his estate. Mr. Moon was employed full-time by BWXT and its predecessor corporations from 1969 until 2005. On June 1, 2005, Mr. Moon was unable to continue working due to a severe heart condition, and he received short-term disability benefits until November 30, 2005. He later applied for long-term disability benefits, and his application was approved on December 1, 2005. As of that date, Mr. Moon was no longer employed with BWXT.

Sometime during his employment in 2005, Mr. Moon enrolled in various employee benefit programs offered by BWXT, including life insurance with coverage in the amount of $200,000.00. The coverage was to become effective January 1, 2006. BWXT verified Mr. Moon's selection of benefits in a November 29, 2005 confirmation statement ("2005 Confirmation Statement"). The 2005 Confirmation Statement, issued several days before Mr. Moon went on long-term disability, identified

3

the relevant coverage as "Employee Life Insurance" under the heading "Plan Name." J.A. 45.[2] The overall group insurance plan in which BWXT participated, titled "Group Insurance Plan for Employees of McDermott Incorporated and Participating Subsidiary and Affiliated Companies," included a life insurance plan issued by Metropolitan Life Insurance Company ("MetLife"), which is the policy at issue in this case (the "MetLife Plan"). See id. at 42.[3]

The MetLife Plan is an ERISA-qualified life insurance plan for BWXT employees. According to the MetLife Plan's Summary Plan Description ("SPD"), McDermott Incorporated is the "Plan Sponsor and Administrator," and MetLife is the "Claims Administrator." J.A. 42. The SPD states that the benefit under the plan "is administered by MetLife pursuant to a contract with the Plan Sponsor." Id. Moreover, in a section entitled "Plan Administration," the SPD states, "MetLife has the right to carry out responsibilities and use maximum discretionary authority permitted by law." Id. at 39.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[3] The Joint Appendix in this appeal contains the MetLife Plan's Summary Plan Description. The full MetLife Plan was filed as part of the Joint Appendix in the first appeal in this case.

On January 13, 2006, BWXT printed, and Mr. Moon sometime thereafter received, a second benefit confirmation statement ("2006 Confirmation Statement") confirming that Mr. Moon had selected certain employee benefits effective during 2006, including a $200,000.00 life insurance benefit. Notably, the 2006 Confirmation Statement did not indicate that Mr. Moon was no longer an employee of BWXT.

In her first amended complaint, Appellant alleged that, in reliance on the 2006 Confirmation Statement, Mr. Moon and his family paid life insurance premiums directly to BWXT during 2006 and that BWXT accepted the payments without objection. According to Appellant's complaint, Mr. Moon and Appellant "reasonably believed that BWXT would provide the benefits including life insurance benefits" if Mr. Moon made his premium payments to BWXT. J.A. 51. On November 18, 2006, Mr. Moon passed away. At the time of his death, the 2006 premium payments death were in arrears. On November 29, 2006, 11 days after Mr. Moon's death, Appellant sent a letter to BWXT and enclosed a check for $1,173.36, paying the entire balance due.

Thereafter, Appellant made a claim directly to BWXT requesting payment of the $200,000.00 life insurance benefit. BWXT denied Appellant's claim by letter dated April 12, 2007, stating that under the terms of the MetLife Plan, because Mr. Moon had ceased active employment with BWXT as a result of

5

permanent disability, he was no longer eligible for group life insurance coverage. Mr. Moon could have elected to convert his group policy to an individual policy, in which he would make premium payments directly to MetLife. However, he did not do so.

B.

On November 10, 2009, Appellant filed this action in Virginia state court. Appellant alleged in her original complaint that Mr. Moon and Appellees entered into an independent post-employment contract for life insurance benefits by way of the 2006 Confirmation Statement, and that Appellees (not MetLife) had an obligation to pay $200,000.00 to Appellant. Appellees timely removed the case to federal court, asserting federal question jurisdiction under ERISA. Appellant moved to remand to case to state court, and the district court denied the motion, concluding, "although the form of the pleadings suggests otherwise, the substance of [Appellant's] claim is revealed as an attempt to vindicate rights under the group life plan." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 836 (W.D. Va. 2010). Therefore, the district court concluded that federal jurisdiction was proper.

After the district court denied Appellant's motion for remand, Appellant filed a first amended complaint containing the following four counts: 1) breach of contract; 2) breach of

6

implied or quasi-contract; 3) estoppel; and 4) negligent breach of ERISA duties. Appellees filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6), which the district court granted. See Moon v. BWX Techs., Inc., No. 6:09-cv-00064, 2011 WL 2670075, at *6 (W.D. Va. July 7, 2011), vacated, Moon I, 498 F. App'x at 276.

Appellant appealed both the district court's denial of the motion for remand and the district court's grant of Appellees' motion to dismiss. With respect to the denial of the motion for remand, we affirmed, concluding, "the district court did not err in determining that Appellant's purported state law claims are actually disguised federal claims arising under ERISA's civil enforcement provision." Moon I, 498 F. App'x at 274. With respect to the district court's grant of Appellees' motion to dismiss, we upheld the dismissal of Appellant's contract claims under the MetLife Plan. Id. at 274-75. But, we vacated the district court's dismissal of Appellant's claims for equitable estoppel and breach of fiduciary duty and remanded the case so the district court could "address anew Appellant's claims" in light of CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), and McCravy v. Metro. Life Ins. Co. ("McCravy II"), 690 F.3d 176 (4th Cir. 2012). Id. at 275-76.

7

On remand to the district court, Appellees filed a supplemental brief in support of their motion to dismiss Appellant's first amended complaint ("Supplemental Brief"). In their Supplemental Brief, Appellees argued that Appellant's equitable estoppel and breach of fiduciary duty claims should be dismissed because Appellees were not acting as "fiduciaries," as that term is defined under ERISA. The district court agreed. First, the district court noted that a person is an ERISA fiduciary only to the extent that he exercises discretionary authority over the plan. See Moon v. BWX Techs., Inc., 956 F. Supp. 2d 711, 717 (W.D. Va. 2013). The district court then outlined the allegations in the first amended complaint that related to Appellees' alleged wrongdoing and concluded that these allegations did not involve discretionary acts. See id. at 718, 719-20. Therefore, the district court held that Appellant's equitable estoppel and breach of fiduciary duty claims failed because Appellees were not acting as ERISA fiduciaries at the time of the alleged wrongful conduct.

Around the time Appellees filed their Supplemental Brief, Appellant filed a motion for leave to amend her first amended complaint. In her proposed second amended complaint, Appellant sought to add claims for "reformation of contract" and "surcharge for breach of fiduciary duty," see J.A. 119-20, as

8

those equitable claims had recently been recognized by the Supreme Court in the ERISA context in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011). The district court denied Appellant's motion, holding that such amendment would be futile. See Moon, 956 F. Supp. 2d at 714-17. The district court explained that the reformation claim failed because Appellant did not sufficiently allege any type of fraudulent conduct on the part of the Appellees. Id. at 716. Further, the district court held that both the reformation and the surcharge claims were futile because none of the named Appellees were acting as ERISA fiduciaries when they engaged in the allegedly wrongful acts on which this action is based. Id. at 716-17.

In the present appeal, Appellant challenges both the district court's grant of Appellees' motion to dismiss Appellant's breach of fiduciary duty and equitable estoppel claims, as well as the district court's denial of Appellant's motion for leave to amend her first amended complaint. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Kenney v. Indep. Order of Foresters, 744 F.3d 901, 905 (4th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual

9

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)).

We review a district court's denial of a motion for leave to amend a complaint for abuse of discretion. Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

III.

A.

We first consider whether the district court erred by dismissing Appellant's first amended complaint under Rule 12(b)(6). In her complaint, Appellant alleges Appellees breached a fiduciary duty, in violation of 29 U.S.C. § 1104, when BWXT accepted Mr. Moon's premium payments during 2006 without notifying Mr. Moon that he was no longer eligible for life insurance benefits under the MetLife Plan. For this alleged violation of ERISA, Appellant seeks equitable estoppel under 29 U.S.C. § 1132(a)(3) in the form of an order estopping Appellees from denying the existence of a life insurance contract between Mr. Moon and Appellees in the coverage amount of $200,000.00. For the reasons described below, we conclude that Appellant has failed to state a claim for breach of fiduciary duty and, therefore, is not entitled to equitable estoppel.

10

1.

Pursuant to 29 U.S.C. § 1132(a)(3), ERISA beneficiaries are empowered "to obtain other appropriate equitable relief" to redress violations of ERISA or ERISA plans. See CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1878 (2011) (citing 29 U.S.C. § 1132(a)(3)). The relief authorized is not "'appropriate equitable relief' at large," Mertens v. Hewitt Assocs., 506 U.S. 248, 253 (1993) (quoting 29 U.S.C. § 1132(a)(3)) (emphasis in original), but rather, only such equitable relief as will enforce the terms of the ERISA plan at issue or ERISA itself, see U.S. Airways v. McCutchen, 133 S. Ct. 1537, 1548 (2013). Consequently, inasmuch as Appellant's claim for equitable relief under 29 U.S.C. § 1132(a)(3) is available only to redress violations of ERISA or the MetLife Plan, Appellant must sufficiently allege such a violation in order to state a valid claim.

Here, the only alleged ERISA violation in Appellant's first amended complaint is Appellees' purported breach of fiduciary duty. See 29 U.S.C. § 1104. Appellant must therefore sufficiently allege that a breach of fiduciary duty has occurred to demonstrate an entitlement to equitable estoppel under 29 U.S.C. § 1132(a)(3). See McCutchen, 133 S. Ct. at 1548.

To state a claim for breach of fiduciary duty under ERISA, the threshold question is whether the plaintiff has

11

sufficiently alleged that the defendant was a "fiduciary." See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 60-61 (4th Cir. 1992) ("Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'"). Therefore, if Appellant is unable to sufficiently allege ERISA fiduciary status as to Appellees, then there exists no ERISA violation for Appellant to redress and equitable relief under 29 U.S.C. § 1132(a)(3) is unavailable. Both aspects of Appellant's claim -- the alleged ERISA violation and the remedy sought -- hinge on whether Appellees were ERISA fiduciaries.[4]

Under ERISA, "a person is a fiduciary with respect to a plan to the extent" that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any

---

[4] This is not to say that only ERISA fiduciaries may be sued under 29 U.S.C. § 1132(a)(3). See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241 (2000) (holding that the authorization under 29 U.S.C. § 1132(a)(3) "extends to a suit against a nonfiduciary 'party in interest' to a transaction barred by [29 U.S.C. § 1106(a)]"); see also id. at 246 (explaining that 29 U.S.C. § 1132(a)(3) "admits of no limit . . . on the universe of possible defendants").

12

moneys or other property of such plan, or has any authority or responsibility to do so; or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In summarizing this definition, we have observed that an ERISA fiduciary is "any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan." Custer v. Sweeney, 89 F.3d 1156, 1161 (4th Cir. 1996). Simply because an employer is an ERISA plan sponsor does not automatically convert the employer into a plan fiduciary. Beck v. PACE Int'l Union, 551 U.S. 96, 101 (2007) (noting that in a situation where an employer is both a plan sponsor and a plan administrator, the employer's "fiduciary duties under ERISA are implicated only when it acts in the latter capacity"). Indeed, because the definition of ERISA fiduciary "is couched in terms of functional control and authority over the plan," we must "examine the conduct at issue when determining whether an individual is an ERISA fiduciary." Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 343 (4th Cir. 2007) (internal quotation marks omitted); see also LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." (internal

13

quotation marks omitted)). Therefore, "an individual or entity can still be found liable as a 'de facto' fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite 'discretionary control' over plan management and administration." <u>Wright v. Or. Metallurgical Corp.</u>, 360 F.3d 1090, 1101-02 (9th Cir. 2004).

2.

Appellant argues that her first amended complaint sufficiently alleges that Appellees were ERISA fiduciaries. Appellant advances several theories in attempt to support this contention, none of which are persuasive.

a.

First, Appellant highlights her conclusory allegation in Paragraph 33 of the first amended complaint, which states that Appellees had "discretionary authority under ERISA to create and manage the benefit plan offered [to] Mr. Moon and that [Appellees] were therefore ERISA fiduciaries as to this Plan." J.A. 54, ¶ 33. Critically, however, the "plan" referenced in Paragraph 33 is not the MetLife Plan. Rather, it is the "written offer to Mr. Moon" in the 2006 Confirmation Statement that, according to Appellant, "constituted a proposal for life insurance benefits <u>separate from the MetLife Plan</u>." <u>Id.</u> ¶ 32 (emphasis supplied).

We have already addressed and rejected this line of argument in the first appeal in this case, where we held that the 2006 Confirmation Statement and Mr. Moon's payment of premiums directly to BWXT did not create any kind of "independent contract for benefits" between Mr. Moon and BWXT. Moon I, 498 F. App'x 268, 274 (4th Cir. 2012). Because we previously concluded that "Appellant's claims for an entitlement to benefits are governed by the language of the [MetLife] Plan," id., Appellees' purported status as ERISA fiduciaries must be analyzed with respect to their actions relating to the MetLife Plan. Accordingly, Appellant's argument that the allegation in Paragraph 33 of the first amended complaint sufficiently alleges that Appellees were ERISA fiduciaries fails.

b.

Nonetheless, Appellant contends that her first amended complaint sufficiently alleges that Appellees were "de facto" ERISA fiduciaries. As noted, because the definition of an ERISA fiduciary "is couched in terms of functional control and authority over the plan," we must "examine the conduct at issue when determining whether an individual is an ERISA fiduciary." Wilmington Shipping, 496 F.3d at 343 (internal quotation marks omitted). After reviewing the first amended complaint, the alleged conduct at issue that possibly raises a claim for breach of fiduciary duty is based on BWXT's acceptance of Mr. Moon's

15

premium payments during 2006, as well as BWXT's failure to notify Mr. Moon that he was no longer eligible for life insurance benefits under the MetLife Plan. Specifically, the first amended complaint alleges:

> 34. As fiduciaries under ERISA for such Plan, [Appellees] had a duty to Mr. Moon to truthfully and accurately advise Mr. Moon if he was ineligible for life insurance benefits within a reasonable time after receiving monthly payments from Mr. Moon for said benefits, if [Appellees] knew or should have known that Mr. Moon was ineligible for life insurance benefits.
>
> . . .
>
> 36. [Appellees] . . . negligently or intentionally breached the duty they owed to Mr. Moon under ERISA to advise him of his ineligibility for life insurance benefits and their conduct, in fact, caused Mr. Moon to believe he had procured said benefits.

J.A. 54-55. Given these allegations, Appellant has sufficiently stated a claim for breach of fiduciary duty only if accepting payments and advising plan participants about eligibility for benefits constitute "discretionary functions with respect to the management, assets, or administration of a plan." Custer, 89 F.3d at 1161.

To determine whether the alleged acts qualify as discretionary, we look to the Department of Labor's ("DOL") regulation entitled "Questions and answers relating to fiduciary responsibility under [ERISA]" for guidance. See 29 C.F.R. § 2509.75-8. In this regulation, the DOL explains, "a person

16

who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." Id. § 2509.75-8(D-2). The following are several examples of administrative or ministerial functions that are not considered discretionary: "[o]rientation of new participants and advising participants of their rights and options under the plan"; "[c]ollection of contributions and application of contributions as provided in the plan"; "[p]reparation of reports concerning participants' benefits"; and "[p]rocessing of claims." Id.

Based on the DOL regulation, BWXT's acceptance of Mr. Moon's premium payments during 2006, as well as its failure to notify Mr. Moon that he was no longer eligible for life insurance benefits under the MetLife Plan, were not "discretionary functions with respect to the management, assets, or administration of a plan." Custer, 89 F.3d at 1161. Rather, these actions are more akin to "[c]ollection of contributions" and "advising participants of their rights and options under the plan," which are purely administrative functions. See 29 C.F.R. § 2509.75-8(D-2). The district court thus correctly concluded that Appellees were not ERISA fiduciaries.

Appellant attempts to bring Appellees' actions within the realm of "discretionary" acts by arguing that "BWXT alone reviewed and investigated" Appellant's claim for life insurance

17

benefits and "alone declined to pay the claim." Appellant's Br. 18. Appellant then cites 29 C.F.R. § 2509.75-8 and argues that BWXT is an ERISA fiduciary because it had "final authority to authorize or disallow benefit payments in cases where a dispute exists." 29 C.F.R. § 2509.75-8(D-3). This argument is without merit. As explained, "a party is a fiduciary [under ERISA] only as to the activities which bring the person within the definition." Coleman, 969 F.2d at 61. Here, the alleged activities that support Appellant's claim for breach of fiduciary duty are BWXT's acceptance of Mr. Moon's premium payments without advising him that he was not eligible for group life insurance under the MetLife Plan. This is a far cry from the purported discretionary handling and unilateral denial of Appellant's life insurance claim under the MetLife Plan. Moreover, in "denying" Appellant's life insurance claim, BWXT was not exercising any discretionary authority to "authorize or disallow benefit payments" of MetLife Plan assets. See 29 C.F.R. § 2509.75-8(D-3). Rather, BWXT was "advising [Appellant] of [her] rights and options under the plan," id. § 2509.75-8(D-2) -- i.e., that Mr. Moon was not eligible for group life insurance benefits under the terms of the MetLife Plan -- which the DOL considers an administrative function. Therefore, Appellant's argument in this regard likewise fails.

c.

Appellant next argues that the terms of the MetLife Plan documents themselves confer ERISA fiduciary status on Appellees. Appellant notes several times in her brief that BWXT was the "Plan Administrator" and that, by virtue of this position, BWXT's receipt of premium payments and its failure to notify Mr. Moon of his ineligibility for group life insurance benefits was a breach of fiduciary duty.[5] However, the text of the MetLife Plan's SPD belies Appellant's argument.

The SPD identifies an entity called "McDermott Incorporated" -- not McDermott International, Inc. or BWXT -- as "Plan Sponsor and Administrator." See J.A. 42.[6] This is directly contrary to Appellant's assertions that BWXT is named

_____

[5] For Appellant's argument to succeed, the MetLife Plan itself would have to provide BWXT with discretionary authority with respect to management, assets, or administration of the plan -- the mere title of "Plan Administrator" is insufficient. See Coleman, 969 F.2d at 61 (looking to the duties outlined in the plan documents to determine whether they confer discretionary authority or responsibility on the purported plan fiduciary); see also Estate of Weeks v. Advance Stores Co., 99 F. App'x 470, 476 (4th Cir. 2004) (unpublished per curiam) ("[O]ur determination of whether a person qualifies as an ERISA fiduciary is based on a person's job activities rather than job title.").

[6] Appellant named McDermott International, Inc. as a party to this litigation rather than McDermott Incorporated. Nevertheless, as explained below, even if Appellant had named the correct entity, the MetLife Plan confers discretionary authority on MetLife, not BWXT or any other Appellee.

19

as "Plan Administrator." In addition, the SPD lists MetLife as the "Claims Administrator," and in a section called "Type of Administration," the SPD states, "[t]his benefit is <u>administered by MetLife</u> pursuant to a contract with the Plan Sponsor." <u>Id.</u> (emphasis supplied). Furthermore, in a section called "Plan Administration," the SPD explicitly states that "MetLife has the right to carry out responsibilities and <u>use maximum discretionary authority</u> permitted by law." <u>Id.</u> at 39 (emphasis supplied). The section continues, noting that these rights and responsibilities include the following:

- Interpret, construe and administer the plan;
- Make determinations regarding plan participation, enrollment and eligibility for benefits;
- Evaluate and determine the validity of benefit claims; [and]
- Resolve any and all claims and disputes regarding the rights and entitlements of individuals to participate in the plans and to receive benefits and payments pursuant to the plans.

<u>Id.</u> at 39-40. Based on the SPD, it could not be more clear that if the MetLife Plan itself confers discretionary authority on a particular entity, that entity is MetLife -- not BWXT or any other named Appellee. Accordingly, Appellant's contention that BWXT is the "Plan Administrator," and therefore an ERISA fiduciary, fails.

d.

Finally, Appellant contends the district court erred by failing to apply the equitable remedies and principles

20

announced by the Supreme Court in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), when it granted Appellees' motion to dismiss. This argument makes little sense. The Supreme Court's decision in Amara "stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)." McCravy II, 690 F.3d at 181. However, because 29 U.S.C. § 1132(a)(3) authorizes appropriate equitable relief only to redress violations of ERISA or an ERISA plan, see McCutchen, 133 S. Ct. at 1548, the threshold inquiry here is whether Appellant has sufficiently alleged such a violation. As explained, Appellant has not. Therefore, there simply is no ERISA violation on which Appellant can hinge an entitlement to the equitable remedies described in Amara.

In sum, Appellant's claim for breach of fiduciary duty and for equitable estoppel both fail because Appellant has failed to allege sufficient facts to show that any of the Appellees were ERISA fiduciaries with respect to Mr. Moon or Appellant. Therefore, the district court correctly dismissed Appellant's first amended complaint.

B.

We next consider whether the district court erred by denying Appellant's motion for leave to amend the complaint after concluding that the amendment would be futile. In her

21

proposed second amended complaint, Appellant sought to add claims for "reformation of contract" and "surcharge for breach of fiduciary duty," noting that those equitable claims had recently been recognized by the Supreme Court in the ERISA context in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011). The district court correctly denied this proposed amendment as futile because Appellees were not ERISA fiduciaries.

Under Federal Rule of Civil Procedure 15(a)(2), the "'grant or denial of an opportunity to amend [a complaint] is within the discretion of the District Court.'" Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182, (1962)). A district court's denial of leave to amend is appropriate when "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the amendment would have been futile.'" Scott, 733 F.3d at 121 (quoting Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006)).

Again, the threshold inquiry under 29 U.S.C. § 1132(a)(3) is whether Appellant has sufficiently alleged a violation of ERISA or an ERISA plan. See McCutchen, 133 S. Ct. at 1548. As described at length above, Appellant has failed to state a claim for breach of fiduciary duty because she has not sufficiently alleged that Appellees were acting as ERISA fiduciaries when they performed the allegedly wrongful acts

22

giving rise to this action. Therefore, there is no ERISA violation that could be redressed by the equitable remedies of reformation of contract or surcharge for breach of fiduciary duty. Accordingly, the district court did not abuse its discretion when it concluded that Appellant's proposed second amended complaint would be futile and denied Appellant's motion for leave to amend her first amended complaint.[7]

## C.

As for the premium payments that Mr. Moon made to BWXT for benefits under the MetLife Plan during 2006 -- benefits for which Mr. Moon was not eligible -- counsel for Appellees acknowledged at oral argument that Appellant is entitled to an immediate return of those premium payments with interest, and agreed that BWXT would refund such payments. See Oral Argument at 16:02–16:26, 21:27-21:34, Moon v. BWX Techs., Inc., No. 13-1888 (May 13, 2014), available at http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. In light of Appellees' counsel's representations to this court, we will remand the case for the district court to: (1) determine the amount of premiums

---

[7] Appellant acknowledges, "[a]ssuming arguendo that the district court was legally correct in finding that the pleadings themselves did not and could not allege ERISA fiduciary or de facto fiduciary status as to BWXT, then [the denial of the motion for leave to amend] would be correct." See Appellant's Br. at 26.

23

owed to Appellant, and (2) enter an order directing Appellees to repay that amount with interest.

## IV.

For the reasons stated, we affirm both the district court's grant of Appellees' motion to dismiss and the district court's denial of Appellant's motion for leave to amend her first amended complaint. We also remand the case to the district court with instructions to determine the amount of premiums owed to Appellant and to enter an order directing Appellees to repay that amount with interest.

<u>AFFIRMED AND REMANDED WITH INSTRUCTIONS</u>