PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KAREN BAURIES KING,
⠀⠀⠀⠀⠀⠀⠀*Plaintiff-Appellant,*

⠀⠀⠀⠀v.

MARRIOTT INTERNATIONAL,
INCORPORATED; KARL I. FREDERICKS,
⠀⠀⠀⠀⠀⠀⠀*Defendants-Appellees.*

No. 02-2139

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-01-1208-AW)

Argued: June 5, 2003

Decided: July 28, 2003

Before WILKINSON, LUTTIG, and SHEDD, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Luttig wrote the opinion, in which Judges Wilkinson and Shedd joined.

---

## COUNSEL

**ARGUED:** William Barnett Schultz, Civil Division, Appellate Staff, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Todd James Horn, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Steven M. Salky, ZUCKERMAN, SPAEDER, L.L.P., Washington, D.C.; Robert B. Fitzpatrick, FITZPATRICK & ASSOCIATES, Washington, D.C., for Appellant.

**OPINION**

LUTTIG, Circuit Judge:

Karen King, the plaintiff-appellant, brought suit in Maryland state court against Marriott International, Inc., her former employer, and Karl I. Fredericks, her immediate supervisor, for wrongful discharge under Maryland state law, asserting in particular that she was discharged for complaining about and for refusing to violate the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The defendants removed the case to federal district court, alleging that ERISA completely preempted her state cause of action. After the district court denied King's motion for remand, the district court granted summary judgment in favor of the defendants, concluding that King had failed to present sufficient proof of a causal link between her termination and her complaints about the management of Marriott's benefits plan.

King appeals, contending that the district court erred by concluding that her wrongful discharge claim was completely preempted by ERISA. We agree with King, and so vacate the district court's judgment and remand for further proceedings.

I.

Karen King was employed in Marriott's benefits department for many years, and was by all accounts an excellent employee prior to 1999. In late 1998 or early 1999, however, a series of events began that threw King into conflict with her supervisors. First, King learned that defendant Fredericks, the Senior Vice President of Compensation and Benefits, recommended that Marriott transfer millions of dollars from its medical plan into its general corporate reserve account. King doubted the appropriateness of this transfer and accordingly expressed her concern to co-workers and to Fredericks.

By late 1999, King had been promoted by Fredericks and given responsibilities regarding benefit plan finances. At this time, she learned that the proposal to transfer the reserve funds had been revived. She again objected to the transfer, fearing that such a transfer

would violate ERISA. She registered her objection with Fredericks, as well as with two in-house attorneys, going so far as to request an opinion letter from one of the in-house attorneys.

Also, in September 1999, Fredericks announced a restructuring of responsibilities within the benefits department. King was promoted to Vice President of Benefits Resources, and the responsibilities in the benefits department were divided between King and a Ms. Brookbank. This division of responsibilities apparently was unsatisfactory to the two subordinates, and the two began a disruptive feud. This feud significantly affected the functioning of the benefits department, even causing several employees to seek transfers.

In early 2000, Marriott proposed another transfer of funds from the medical plan, and again King objected, both verbally and in writing to Fredericks. In late March 2000, Fredericks fired both King and Brookbank, for the purported reason that their continuing feud hindered the operation of the benefits department.

King then brought suit against Marriott and Fredericks in Maryland state court, alleging that her termination was wrongful and violative of public policy under Maryland law. Defendants promptly removed the case to federal district court in Maryland, contending that ERISA preempted her wrongful termination claim. King moved to remand, or in the alternative to amend her complaint to allege a variety of new claims, including an explicit ERISA anti-retaliation claim. The district court denied King's motion to remand, and granted her motion to amend her complaint. Thereafter, however, the district court granted summary judgment to defendants on all claims. On the ERISA anti-retaliation claim and the state wrongful discharge claim, the district court concluded that King had failed to establish a causal link between her termination and her complaints regarding the management of the ERISA plan. King now appeals, contending that the district court erred by denying her motion to remand her wrongful discharge claim.

II.

Defendants argue in support of the district court's denial of the motion to remand the case solely on the grounds that King's claims

were completely preempted by ERISA. They thus present the question whether, despite King's attempt to plead a state law cause of action, King has actually pled a federal cause of action.

Although the plaintiff is generally the "master of his complaint," *Custer* v. *Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996), the federal removal statute allows a defendant to remove certain claims originally brought in state court into federal court. 28 U.S.C. § 1441. Removal is appropriate, however, only where the civil action is one over which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Hence, to determine if King's state wrongful discharge claim was removable, we must analyze whether her claim could have been brought originally in federal district court.

A civil action "arising under the Constitution, laws, or treaties of the United States" can be brought originally in federal district court. 28 U.S.C. § 1331. Under the venerable well-pleaded complaint rule, jurisdiction lies under section 1331 only if a claim, when pleaded correctly, sets forth a federal question; in other words, whether "a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor* v. *Anderson*, 234 U.S. 74, 75-76 (1914); *see Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112-13 (1936) ("[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."); *Louisville & Nashville R.R. Co.* v. *Mottley*, 211 U.S. 149, 152 (1908). Thus, ordinarily courts "look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer*, 89 F.3d at 1165. In particular, a claim in which the federal question arises only as a defense to an otherwise purely state law action does *not* "arise under" federal law, and hence jurisdiction would not lie under section 1331. *See Franchise Tax Board* v. *Construction Laborers Vacation Trust*, 463 U.S. 1, 12 (1983).

There is one corollary to the well-pleaded complaint rule. "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit."

*Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63 (1987). Therefore, a defendant's raising of the defense of federal preemption is, under the well-pleaded complaint rule, insufficient to allow the removal of the case to federal court. *See Gully*, 299 U.S. at 116 ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby."). But, in some cases, federal law so completely sweeps away state law that any action purportedly brought under state law is transformed into a federal action that can be brought originally in, or removed to, federal court. *See Metropolitan Life*, 481 U.S. at 63-64, 67. The operation of this rule has come to be known as the doctrine of "complete preemption." The Supreme Court recently summarized the doctrine in *Beneficial National Bank* v. *Anderson*, 2003 U.S. LEXIS 4277 (June 2, 2003). There, the Court emphasized that the touchstone of complete preemption is "whether Congress intended the federal cause of action" to be "the exclusive cause of action" for the type of claim brought by a plaintiff. *Id*. at *15.

In cases of complete preemption, however, it is misleading to say that a state claim has been "preempted" as that word is ordinarily used. In such cases, in actuality, the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute. *See*, *e.g.*, *Darcangelo* v. *Verizon Communications, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502 [of ERISA], the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502."). Thus, a vital feature of complete preemption is the existence of a federal cause of action that replaces the preempted state cause of action. Where no discernable federal cause of action exists on a plaintiff's claim, there is no complete preemption, for in such cases there is no federal cause of action that Congress intended to be the exclusive remedy for the alleged wrong.

We have found that ERISA does completely preempt many state law claims. In particular, "when a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action can be removed to federal court." *Darcangelo*, 292 F.3d at 187.

The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action. *See Custer*, 89 F.3d at 1166 ("The absence of a particular remedy under ERISA, moreover, has no bearing on whether a state law falls within the scope of § 514 [ERISA's preemption provision]."); *see also Anderson* v. *Electronic Data Systems Corp.*, 11 F.3d 1311, 1314 (1994). But in such cases, preemption serves only as a federal defense, the barred claims are not completely preempted, and thus not removable to federal court.

With this framework firmly in mind, we turn now to the particulars of King's complaint to determine whether ERISA provides a civil remedy for the wrongs King alleges.

A.

We first must address defendants' argument that King has waived her objection to removal by amending her complaint to explicitly assert a cause of action under section 502 of ERISA. We agree with the Fifth Circuit that "the Supreme Court has looked favorably upon a plaintiff's argument that diligent objection renders the waiver doctrine inapplicable." *Waste Control Specialists* v. *Envirocare*, 199 F.3d 781, 785 (5th Cir. 2000), *citing Caterpillar, Inc.* v. *Lewis*, 519 U.S. 61, 72-77 (1996). In *Caterpillar*, analyzing the circumstance where a case was wrongfully removed to federal court on the basis of diversity, the Court noted that the plaintiff "by timely moving for remand, did all that was required to preserve his objection to removal." 519 U.S. at 74. Hence, a plaintiff's claim that the removal of his case was improper under 28 U.S.C. § 1441 is preserved when the plaintiff timely moves for remand.

Even without this suggestion from *Caterpillar*, we would conclude that King did not waive her objection to removal. King's amendment of her complaint to make an express claim under ERISA did no more than make explicit what the district court held (by concluding that her state claim was completely preempted) she did inadvertently and implicitly, namely, bring an action under Section 502 of ERISA.

Though in *Caterpillar*, the Court did ultimately affirm the lower court judgment, despite the preserved objection to the removal, on the basis that "once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938), considerations of finality, efficiency, and economy become overwhelming," 519 U.S. at 75, those interests are not present here. As noted by the Fifth Circuit, a diversity case "differs fundamentally from a federal question case," *Waste Control Specialists*, 199 F.3d at 785 n.2, in the context of complete preemption. An erroneous determination by the district court that a particular claim is completely preempted significantly shifts the nature of the law that would be applied to the claim. The state claim wrongfully determined to be completely preempted would be analyzed as a federal claim under federal law. *See Darcangelo* v. *Verizon Communications, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002). Upon a remand to a state court, however, the state claim would be analyzed under the appropriate state law, which law may contain rules of decision substantially different from the rules contained in federal law. Wrongful removal here would thus destroy King's legitimate state claim, rather than (as in the case of a wrongfully-removed diversity action) simply change the identity of the deciding court. Accordingly, we conclude that we can and should address King's argument that the district court erroneously failed to remand her state unlawful discharge claim.

## B.

We turn then to the question of whether ERISA provides a cause of action for the wrongs alleged by King. Section 502 of ERISA creates a civil cause of action, invocable by many different parties for particular effect. For present purposes, the only relevant portion of section 502 is subsection 502(a)(3), which states that

> [a] civil action may be brought — . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).[1] The only provision of ERISA which constitutes the "provision" or "provisions of this subchapter" therein referenced is section 510, which reads as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the [the benefits plan, ERISA, or certain other statutory provisions], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [the benefits plan, ERISA, or certain other statutory provisions]. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. And the only portion of section 510 possibly applicable to King is the sentence barring the discharge of "any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter." *Id.*

The most immediate question is the proper scope of the phrase "inquiry or proceeding." In interpreting a very similar provision of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, we concluded that the term "proceeding" referred only to administrative or legal proceedings, and not to the making of an intra-company complaint. *See Ball* v. *Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000).[2] In

---

[1]The parties do not dispute that King was a "fiduciary" as defined in ERISA.

[2]The relevant provision in the FLSA makes it unlawful for an employer

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.

29 U.S.C. § 215(a)(3).

*Ball*, we said that "the 'proceeding' necessary for liability . . . refers to procedures conducted in judicial or administrative tribunals," noting that "proceeding," in the Act, was "modified by attributes of administrative or court proceedings." *Id.* In particular, we explained, "testify" and "institute" both connote "a formality that does not attend an employee's oral complaint to his supervisor." *Id.* We also concluded that the FLSA's use of narrower language than that found in the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 counseled a narrower interpretation of the scope of the FLSA's anti-retaliation provision. *Id.*

In the instant case, as well, the use of the phrase "testified or is about to testify" does suggest that the phrase "inquir[ies] or proceeding[s]" referenced in section 510 is limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor. The phrase "given information" does no more than insure that even the provision of non-testimonial information (such as incriminating documents) in an inquiry or proceeding would be covered. And, here as well as in *Ball*, the anti-retaliation provision in section 510 is much narrower than the equivalent anti-retaliation provisions in such statutes as Title VII of the Civil Rights Act of 1964, indicating a "much more circumscribed" remedy. *Ball*, 228 F.3d at 364.

King's complaint in state court alleged that she was terminated for complaining to her supervisor, Fredericks, and several other Marriott officers and attorneys about anticipated transfers of assets from Marriott's medical plan. Nowhere in the complaint does there appear any allegation that King had testified in any proceeding (legal, administrative, or otherwise), or that she was about to testify. Nor is there any allegation that she had given information in such a proceeding. At best, King's complaint, and the evidence in the record, show only that King filed internal complaints with some of her co-workers, her supervisor, and some of Marriott's attorneys, filings which do not bring her within the ambit of section 510. (Indeed, defendants' attorney at oral argument conceded that section 510 did not apply to King's allegations.)

Because none of King's actions are protected under section 510, the only potentially relevant provision, ERISA does not provide a fed-

eral cause of action for King's allegations. Consequently, her state wrongful discharge claim is not completely preempted, and removal of her claim was inappropriate.[3]

Two other Circuits have ruled otherwise, but we find their reasoning to be unpersuasive. In *Anderson* v. *Electronic Data Systems Corp.*, 11 F.3d 1311, 1315 (5th Cir. 1994), in reaching its contrary decision, the Fifth Circuit merely recited section 510 without even addressing the facial inapplicability of section 510 to intra-office complaints. In *Hashimoto* v. *Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993), the Ninth Circuit at least recognized the evident inapplicability of the statute's language to intra-office complaints, but concluded that ERISA provides a remedy since the "statute [was] clearly meant to protect whistle blowers" and could be "fairly construed to protect a person in [plaintiff's] position if, in fact, she was fired because she was protesting a violation of law in connection with an ERISA plan." *Id.* at 411. We simply do not agree that the language of section 510 can be "fairly construed" to extend to such a circumstance. Nor do we think that we would be free to reject the most compelling interpretation of the statutory language for a "fair" interpretation, even if we preferred as a matter of policy the result yielded by the broader interpretation.[4]

---

[3]We need not and do not rule on the question of whether King's state wrongful discharge claim is preempted under section 514 of ERISA, 29 U.S.C. § 1144. Since it could very well be that King' claim is preempted (just not completely preempted), defendants' fear that "one could do an end run around ERISA's broad preemption provision by asserting a state law claim that directly implicates ERISA, but is not actionable under ERISA" is misguided. Appellees' Brief at 46.

[4]The court's policy preference appeared to drive the interpretive analysis in *Hashimoto*. As it explained its thinking,

> [t]he normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.

*Hashimoto*, 999 F.2d at 411.

*CONCLUSION*

The judgment on the state wrongful discharge claims is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*VACATED AND REMANDED*