**Rose PAASCH, Plaintiff,**

v.

**NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION, Defendant.**

**Case No. 1:15–cv–01638–GBL–MSN**

United States District Court, E.D. Virginia, Alexandria Division.

Signed April 8, 2016

Sharon Fast Gustafson, Arlington, VA, for Plaintiff.

Lindsay Bush Velarde, Susan Frier Wiltsie, Hunton & Williams LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

Gerald Bruce Lee, United States District Judge

THIS MATTER is before the Court on Defendant National Rural Electric Coop-

erative Association's ("NRECA") Motion to Dismiss Count I of Plaintiff's Amended Complaint for Failure to State a Claim. (Doc. 5). This case arises out of NRECA's alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.,* (Count I), and the Family and Medical Leave Act of 1993 ("FMLA"), 2 U.S.C. § 1312, *et. seq.,* (Count II). (Doc. 3).

There are two issues before the Court. The first issue is whether Plaintiff Rose Paasch ("Paasch") states a plausible claim under 29 U.S.C. § 1105(a) ("Liability for breach of co-fiduciary") when she alleges that NRECA interfered with her "right" under § 1105(a) to remedy NRECA's non-compliance with ERISA, given that Paasch was allegedly a co-fiduciary to NRECA's 401(k) Pension Plan and Retirement Security Plan (the "ERISA plans"). The second issue is whether Paasch states a claim for relief under 29 U.S.C. § 1140 ("Interference with protected rights") when she only reported NRECA's ERISA noncompliance violations to her supervisor, her director, and NRECA's ERISA attorney.

This Court **GRANTS** Defendant's Motion to Dismiss because (1) Paasch fails to state a plausible claim under 29 U.S.C. § 1105(a) because she does not sufficiently allege she was a plan fiduciary and § 1105(a) does not give rise to the cause of action that Paasch alleges, and (2) Paasch fails to state a claim under 29 U.S.C. § 1140 because Paasch's internal reporting was not the type of "inquiry or proceeding" required by the Fourth Circuit for protection under § 1140.

## I  BACKGROUND

Plaintiff Rose Paasch ("Paasch") is a former Retirement Compliance Consulting Representative at NRECA. (Doc. 3 ¶ 4). At all relevant times, Paasch was a full-time employee of NRECA and was a par-

ticipant in its ERISA multiple-employer plans, including its 401(k) Pension Plan and its Retirement Security Plan. (*Id.* ¶ 6). NRECA is the sponsor, administrator, and fiduciary of its multiple employee benefit plans, including the 401(k) Pension Plan and the Retirement Security Plan, and NRECA is subject to ERISA. (*Id.* ¶ 12).

In her capacity as Retirement Compliance Consulting Representative, Paasch performed several functions relating to NRECA's ERISA plans. (Doc. 3 ¶ 7). First, Paasch determined whether the plans of NRECA's member companies were in compliance with Department of Labor ("DOL") and Internal Revenue Service ("IRS") requirements so that member companies could join NRECA's plans. (*Id.*) Second, Paasch assessed the feasibility of amending plan designs for member companies seeking to amend their adoption of the NRECA plans in accordance with DOL and IRS requirements. (*Id.*) She also decided whether the member companies were authorized to make the requested amendments. (*Id.*) Third, Paasch was responsible for advising member companies on whether they could exclude an employee from participation in a plan. (*Id.*) Fourth, and finally, Paasch spoke at conferences to educate and train plan administrators. (*Id.*) Paasch received good performance evaluations from the time she began at NRECA in March 2006 until approximately late 2012. (*Id.* ¶ 21).

Paasch alleges that NRECA breached the fiduciary duties that it owed to plan participants and beneficiaries through several acts and omissions related to the ERISA plans. (Doc. 3 ¶ 15). Specifically, first, Paasch alleges that NRECA failed to timely reinstate employee benefits after military leave or accurately perform non-discrimination testing as required by the IRS. (*Id.*) Second, Paasch alleges that NRECA member companies failed to in-

form eligible employees of their eligibility to participate in the ERISA plans, and she alleges that the member companies misreported compensation, resulting in under-calculation of employee benefits. (*Id.*) Third, Paasch alleges that at least one member company failed to make contributions to employee retirement plans using the contribution formula in the adoption agreement and that at least one member company violated ERISA's minimum participation rules. (*Id.*) After learning of these issues, Paasch alleges that NRECA took three different types of action: (1) it self-corrected some instances of noncompliance when it should have instead disclosed the noncompliance to the IRS, (2) it self-corrected some instances after the statute of limitations for self-correction had run or was no longer an available remedy, and (3) it altogether failed to report or correct some instances of noncompliance. (*Id.* ¶ 16).

Paasch asserts that she reported several non-compliance issues that required self-correction or reporting to her supervisor Carol Brecht ("Brecht") and to NRECA's Director of Compliance Michele Gardner ("Gardner"). (Doc. 3 ¶ 19). Paasch asserts that sometimes, Gardner would respond that she was making the executive decision to let the allegedly non-compliant work continue as it was. (*Id.*) Paasch alleges that at other times, Gardner would ask Paasch for more information and state that the issues would be addressed later; however, Paasch alleges that the issues were never adequately addressed or corrected. (*Id.*)

In 2012, the IRS audited NRECA's 401(k) Pension Plan. (Doc. 3 ¶ 22). During the investigation, Gardner allegedly told Paasch not to have contact with the IRS agent inspecting the nondiscrimination testing, and Gardner assigned Paasch's junior colleague to handle the inquiry.

(*Id.*) Gardner also allegedly instructed Paasch to "watch what she said in the open because the IRS agent may overhear her." (*Id.*) On July 5, 2012, the DOL found several ERISA violations and required NRECA to restore twenty-seven million dollars to their ERISA plans. (*Id.* ¶ 20).

In February 2013, Paasch told Brecht that she needed FMLA leave to care for her father due to his serious health condition. (Doc. 3 ¶ 34). As per Brecht's suggestion, Paasch began to work four ten-hour days instead of taking leave. (*Id.*) Brecht allegedly told Paasch that she would be put on probation if anything went wrong at work while she was out for her father's medical appointments. (*Id.*) On July 18, 2013, NRECA put Paasch on a ninety-day probation, which NRECA stated it imposed for Paasch's unsatisfactory performance. (*Id.* ¶ 37). Paasch alleges that the probation was in retaliation for either: (1) her request for FMLA leave or (2) reporting information about, and continuing to pursue corrective action for, NRECA's breaches of fiduciary duty under ERISA. (*Id.* ¶¶ 23, 37).

In late 2013, Paasch reported to Gardner and Brecht a noncompliance issue relating to minimum plan participation; Gardner and Brecht allegedly asked Paasch to investigate and report her findings. (Doc. 3 ¶¶ 25, 26). Early in 2014, Paasch spoke with NRECA's ERISA attorney, Steve Summers, about some of NRECA's non-compliance issues. (*Id.* ¶ 28). Summers allegedly told Paasch that he had spoken to Gardner about the possibility of not disclosing the ERISA violations to the IRS and that he had confirmed there was no way to avoid disclosing the violations. (*Id.*) On March 18, 2014, Paasch raised with Gardner additional noncompliance issues related to the nondiscrimination testing of NRECA's Retirement Security Plan. (*Id.* ¶ 29). Paasch

alleges that member companies' plans failed to meet IRS minimum participation requirements and that there were additional problems with general nondiscrimination in terms of benefits and coverage. (*Id.*) On March 25, 2014, Paasch informed Brecht that there were approximately twenty member plans that were failing, or were at risk of failing, nondiscrimination testing. (*Id.* ¶ 30).

On April 2, 2014, Gardner told Paasch that she must handle an "out-of-the-ordinary IT project." (Doc. 3 ¶ 31). The project did not relate to Paasch's normal job duties. (*Id.*) On April 8, 2014, NRECA terminated Paasch's employment. (*Id.* ¶ 32). Paasch asserts that NRECA gave her a letter "falsely stat[ing]" that she was terminated for unsatisfactory performance. (*Id.* ¶ 49). Paasch asserts that she was given the IT project and was terminated in retaliation for her reports on NRECA's ERISA violations. (*Id.* ¶¶ 31, 32).

Paasch seeks relief under 29 U.S.C. § 1132(a)(3), ERISA's civil enforcement provision, for two alleged ERISA violations: (1) NRECA's alleged violation of 29 U.S.C. § 1105(a) ("Liability for breach of co-fiduciary") when it interfered with Paasch's right to make reasonable efforts to remedy NRECA's noncompliance issues; and (2) NRECA's alleged violation of 29 U.S.C. § 1140 ("Interference with protected rights") when it placed Paasch on probation and terminated her employment in response to her reports of NRECA's noncompliance. (Doc. 3 ¶ 32). Paasch filed her Complaint on December 10, 2015, (Doc. 1), and filed her Amended Complaint on February 7, 2016 (Doc. 3). On February 22, 2016, NRECA filed a Motion to Dismiss Count I of the Amended Complaint, or, in the alternative, Motion to Strike Paasch's jury trial demand on her ERISA claim. (Doc. 5). Paasch filed her Opposition to the Motion on March 7, 2016.

(Doc. 11). NRECA Filed its Response on March 14, 2016. (Doc. 13).

## II. STANDARD OF REVIEW

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In considering a rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir.2011) (citations omitted). No such assumption of truth is afforded to those "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 543 (4th Cir. 2013) (citations omitted). Nor is the court obligated to assume the veracity of the legal conclusions drawn from the facts alleged. *Adcock v. Freightliner LLC,* 550 F.3d 369, 374 (4th Cir.2008) (citing *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085–86 (4th Cir.1979)). Thus, the court's review involves the separation of factual allegations from legal conclusions. *Burnette v. Fahey,* 687 F.3d 171, 180 (4th Cir.2012). In addition to the complaint, the court will also examine "documents incorporated into the complaint by reference," as well as those matters properly subject to judicial notice. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir.2013) (citations omitted); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 176 (4th Cir.2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol,* 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck,* 708 F.3d at 554 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). The plausibility requirement imposes not a probability requirement but rather a mandate that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 and *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). The complaint must present " 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC,* 615 F.3d 312, 317 (4th Cir.2010) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient nonconclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *See Giacomelli,* 588 F.3d at 196–97 (citing *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937 and *Gooden v. Howard Cnty., Md.,* 954 F.2d 960, 969–70 (4th Cir.1992) (en banc)).

## III.  ANALYSIS

The Court GRANTS Defendant's Motion to Dismiss because the allegations in the Amended Complaint do not sufficiently state a claim under 29 U.S.C. § 1105(a) or § 1140; therefore, Paasch does not sufficiently state a claim under 29 U.S.C. § 1132(a)(3), ERISA's civil enforcement provision.

As a preliminary matter, Paasch asserts that 29 U.S.C. § 1132(a)(3) ("Civil enforcement") provides a remedy for NRECA's alleged violations of § 1105(a) and § 1140. (Doc. 3 ¶ 32). Pursuant to § 1132(a)(3), ERISA participants, beneficiaries, and fiduciaries are empowered to "obtain appropriate equitable relief" to redress violations of ERISA.  29 U.S.C. § 1132(a)(3). Specifically, § 1332(a)(3) states:

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. 1332(a)(3).

The threshold inquiry under 29 U.S.C. § 1132(a)(3) is whether Plaintiff has sufficiently alleged a statutory violation of ERISA. *US Airways v. McCutchen,* —— U.S. ——, 133 S.Ct. 1537, 1548, 185 L.Ed.2d 654 (2013). Here, Paasch alleges that NRECA violated two provisions of ERISA: (1) 29 U.S.C. § 1105(a), when it interfered with her "right" as a fiduciary to make reasonable efforts to remedy NRECA's noncompliance with ERISA by placing her on probation and terminating her employment; and (2) 29 U.S.C. § 1140, when it placed her on probation and terminated her employment in retaliation for her reports regarding NRECA's ERISA

violations. (Doc. 3 ¶ 32). Each alleged violation will be analyzed in turn.

### A. Paasch Fails to State a Plausible Claim for Relief Under 29 U.S.C. § 1105(a) Because: (1) Paasch Does Not Sufficiently Allege That She Was a Fiduciary to NRECA's ERISA Plans and (2) She Does Not Assert a Cause of Action Under § 1105(a)

#### i. Paasch does not sufficiently allege that she was a fiduciary to NRECA's ERISA plans

The Court holds that Paasch does not plausibly allege that she was a fiduciary to NRECA's ERISA plans because she fails to allege facts sufficient to show that she had functional control and authority over management of the ERISA plans.

Section 1105(a) imposes liability on co-fiduciaries for breach of fiduciary duty if they: (1) participate in, conceal, or enable another fiduciary's breach or (2) know about the breach. 29 U.S.C. § 1105(a). If a co-fiduciary knows about the breach, he may avoid liability if he makes reasonable efforts under the circumstances to remedy the breach. *Id.* § 1105(a)(3).

Section 1105(a) states:

(a) Circumstances giving rise to liability

In addition to any liability which he may have under any other provisions of this part, *a fiduciary* with respect to a plan *shall be liable for a breach of fiduciary responsibility of another fiduciary* with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; . . .

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (emphasis added).

To state a claim for breach of fiduciary duty under ERISA, the threshold question is whether the plaintiff sufficiently alleges that he was a fiduciary under the ERISA covered plans. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir.1992) (stating that before a party may establish a breach of fiduciary duty, he must establish that the party charged with the breach meets the statutory definition of "fiduciary"). 29 U.S.C. § 1002(21)(A) defines "fiduciary" for ERISA purposes as:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises *any discretionary authority* or *discretionary control* respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has *any discretionary authority* or *discretionary responsibility in the administration of such plan.*

29 U.S.C. § 1002(21)(A) (emphasis added).

"On a motion to dismiss pursuant to Rule 12(b)(6), the Court examines the sufficiency of allegations in the complaint with regard to the fiduciary's status, and specifically, whether it is alleged that the individual acted with functional control, discretion, and authority over the employee benefit plan." *Searls v. Sandia Corp.*, 50 F.Supp.3d 737, 747 (E.D.Va.2014). The thrust of the inquiry is whether the plaintiff has "sufficiently alleged that the fiduciary exercised a requisite level of control over the Plan and its administration." *Id.* (holding that the plaintiffs' allegations that the defendant sent them a notice letter regarding their pension benefits and that the defendant was labeled the "individual signing as plan administrator" on a federal tax form were insufficient). The Fourth

Circuit, in summarizing the fiduciary definition under ERISA, observed that a fiduciary is "any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir.1996). In addition, duties relating to plan design and plan amendment are not fiduciary duties. *See Cuthie, v. Fleet Reserve Ass'n,* 743 F.Supp.2d 486, 495 (D.Md.2010) (noting that the functions enumerated in ERISA's definition of fiduciary do not include plan design and holding that plan sponsors who alter the terms of a plan are not fiduciaries).

In addition to Fourth Circuit case law, the DOL regulation entitled "Questions and answers relating to fiduciary responsibility under [ERISA]" gives guidance in determining whether the alleged acts qualify as discretionary authority or responsibility. *See* 29 C.F.R. § 2509.75–8. The DOL explains that a person who performs *"purely ministerial functions ...* within a framework of policies, interpretations, rules, and practices and procedures made by other persons is *not* a fiduciary." *Id.* § 2509.75–8(D–2) (emphasis added). Some examples of administrative or ministerial functions include: "[a]pplication of rules determining eligibility for participation or benefits;" "[o]rientation of new participants and advising participants of their rights and options under the plan;" and "[m]aking recommendations to others for decisions with respect to plan administration." *Id.*

■ Here, in her Amended Complaint, Paasch states that as part of her duties at NRECA, she (1) determined whether the member companies' plans complied with DOL and IRS requirements, (2) assessed the feasibility of amending plan designs for member companies, (3) determined feasibility and advised member companies on whether they could exclude employees from participation in the plans, and (4) spoke at conferences to educate and train plan administrators. (Doc. 3 ¶ 7). These duties do *not* qualify as fiduciary duties under ERISA because they are not specified discretionary functions with respect to the management, assets, or administration of the ERISA plans. *See generally Custer,* 89 F.3d at 1161. Paasch's alleged duties generally consist of determining the member companies' plans' compliance with applicable laws, assessing feasibility of amending member companies' plans or excluding persons, and informing others of her assessment or determination. (Doc. 3 ¶ 7). Once Paasch gave her determination or assessment, the member companies made the ultimate decision on whether to take any action. (*Id.*) Paasch did not have the discretion to take any action; instead, she made recommendations to those who did have functional control and discretion over the plans. (*Id.*)

Further, Paasch's duties are more akin to the ministerial duties described in the DOL regulation than acts that qualify as discretionary authority. Determining whether the plans complied with DOL and IRS requirements and determining whether employees could be excluded is akin to "determining eligibility for participation or benefits." 29 C.F.R. § 2509.75–8(D–2). Paasch's duties of determining whether the plans complied with the requisite laws, assessing the feasibility of amending plan designs, and speaking at conferences to educate and train plan administrators is akin to simply "making recommendations to others for decisions with respect to plan administration." *Id.* Additionally, Paasch's duties relating to plan design and plan amendment are not fiduciary duties. *See Cuthie,* 743 F.Supp.2d at 495 (dismissing claims for breach of fiduciary duty because plan design and plan amendment are not

fiduciary acts under ERISA). In sum, Paasch's duties were all *ministerial functions* "within a framework of policies, interpretations, rules, practices, and procedures made by other persons." *Id.* Thus, Paasch did not sufficiently allege that she performed "specified discretionary functions with respect to the management, assets, or administration" to NRECA's plans. *See Custer*, 89 F.3d at 1161. In her role as the Retirement Compliance Consulting Representative, she did not exercise the requisite level of *control* over the ERISA plans and their administration; instead, she merely advised those who had control.

As a result, Paasch was not a fiduciary, and she does not fall within the purview of § 1105(a). The Court GRANTS Defendant's Motion to Dismiss because Paasch does not allege sufficient facts to show that NRECA violated § 1105(a); therefore, her claim under § 1132(a)(3) is also dismissed.

### ii. 29 U.S.C. § 1105(a) does not give rise to the cause of action that Paasch alleges

■ The Court holds that Paasch fails to make a plausible claim under § 1105(a) because this section does not give rise to a cause of action by a co-fiduciary against a fiduciary for interference in the attempted remedy of the fiduciary's alleged breach of fiduciary duty.

■ To succeed in a claim under § 1105(a), a plaintiff must establish that a fiduciary breached his fiduciary duties under the plan and that the co-fiduciary "either participated in those breaches or knew of the breaches but did nothing to remedy them." *White v. Martin*, 286 F.Supp.2d 1029, 1042 (D.Minn.2003). By its plain language, § 1105(a) does not impose liability on a fiduciary who interferes with a co-fiduciary's ability to make reasonable efforts under the circumstances to remedy the fiduciary's breach. 29 U.S.C.

§ 1105(a)(3) ("[A] fiduciary with respect to a plan *shall be liable for a breach of fiduciary responsibility of another fiduciary* ... if he has knowledge of a breach by such other fiduciary, *unless* he makes reasonable efforts under the circumstances to remedy the breach.") (emphasis added). In other words, § 1105(a) cannot be used to assign liability against a fiduciary for interfering with a co-fiduciary's "reasonable efforts" to remedy its breach.

Paasch argues that she had "a right and an obligation" under § 1105(a) to make reasonable efforts to remedy NRECA's breach of fiduciary duty and that NRECA interfered with her right when it placed her on probation and terminated her employment. (Doc. 11, at 5). However, § 1105(a) does not bestow any "right" on ERISA fiduciaries; rather, it imposes liability on a co-fiduciary for the breaches of another. (Doc. 6). The language to which Paasch cites—"mak[ing] reasonable efforts under the circumstances to remedy the breach"—is an opportunity to *avoid liability* for a fiduciary who knows about the violations of another. § 1105(a)(3). Paasch cites no case law or additional authority, other than the statute itself, to support her argument that § 1105(a) can give rise to liability against a fiduciary for interfering with a co-fiduciary's efforts to remedy the breach. (Doc 11, at 4–5). Even in oral argument, Paasch could point to no case that permitted this cause of action under § 1105(a). Therefore, because § 1105(a) is merely a provision to assign liability to a fiduciary for the breaches of another, there is no "right" to which Plaintiff is entitled under § 1105(a). Thus, there is no "right" with which Defendant could have interfered by placing Paasch on probation and terminating her employment. Section 1105(a) does not give rise to liability for one fiduciary interfering with another's

"reasonable efforts" to remedy a breach of fiduciary duty.

As a result, this Court GRANTS Defendant's Motion to Dismiss because Paasch fails to sufficiently allege a violation of § 1105(a). Paasch consequently fails to allege sufficient facts to state a claim under § 1132(a)(3).

### iii. It is appropriate to dismiss Paasch's § 1105(a) claim via a 12(b)(6) motion

The Court holds that it is appropriate to dismiss Paasch's claim as to her fiduciary status via a Rule 12(b)(6) motion. Paasch asserts in her Opposition that her status as a fiduciary presents questions of fact that may not be disposed of in a motion to dismiss. (Doc. 11, at 6). However, pursuant to Rule 12(b)(6), this Court has previously dismissed a claim for breach of fiduciary duty when the plaintiff did not allege facts sufficient to show that the defendant was a fiduciary to the ERISA plan. In *Searls*, the court dismissed plaintiffs' claim that one of the defendants was a fiduciary to the pension plan where the plaintiffs only alleged (1) that the defendant had sent plaintiffs a notice letter regarding their pension benefits and (2) that the defendant was labeled "the individual signing as plan administrator" on a federal tax form. *Searls*, 50 F.Supp.3d at 748. The court held that the plaintiffs failed to show that the defendant had the "functional control and authority over management of the Plan;" therefore, the court dismissed the plaintiffs' claim. *Id.*

The Fourth Circuit has also affirmed dismissal pursuant to Rule 12(b)(6) for failure to allege facts sufficient to show that appellees were ERISA fiduciaries. *See Moon v. BWX Techs., Inc.*, 577 Fed.Appx.

224, 233 (4th Cir.2014). In *Moon*, plaintiffs alleged that the defendant was a fiduciary because he accepted payments and advised plan participants about their eligibility for benefits. *Id.* at 230. The court held that the facts alleged were insufficient to plausibly suggest that the defendant was a fiduciary and affirmed the district court's dismissal. *Id.* at 233. Thus, it is appropriate for a court to dismiss a claim for breach of fiduciary duty when, as here, the plaintiff has failed to sufficiently allege the party's fiduciary status.

Accordingly, this Court may dismiss Paasch's claim under 29 U.S.C. § 1105(a) pursuant to a Rule 12(b)(6) motion to dismiss. Thus, the Court GRANTS Defendant's Motion to Dismiss because Paasch fails to allege sufficient facts to state claim for relief under 29 U.S.C. § 1105(a). Consequently, Paasch also fails to state a plausible claim under § 1132(a)(3).

### B. Paasch Does Not State a Plausible Claim Under ERISA's Retaliation Provision Because Her Internal Reporting Was Not In The Context of an "Inquiry or Proceeding" as Required by the Fourth Circuit

The Court holds that Paasch fails to plausibly allege that she falls under the retaliation provision of § 1140[1] because her reports to her supervisor, director, and NRECA's in-house attorney were not in the context of the type of "inquiry or proceeding" required by the Fourth Circuit.

Section 1140 states, in relevant part, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person *because he has given information* or has testified or is

---

1. 29 U.S.C. § 1140 codified ERISA § 510; therefore, the two terms are used interchangeably.

about to testify *in any inquiry or proceeding* relating to this chapter or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140 (emphasis added). In *King v. Marriott International Inc.*, the Fourth Circuit analyzed the meaning of "any inquiry or proceeding" under § 1140. 337 F.3d 421, 427 (4th Cir.2003). There, King complained about the company's potential ERISA violations to her supervisor, several officers, and two in-house attorneys. *Id.* at 423. In analyzing the scope of the phrase "inquiry or proceeding," the court looked at the language "testified or about to testify" and stated that this language suggests that "inquiry or proceeding" is *"limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor."* *Id.* at 427 (emphasis added). In addition, the court noted that the phrase "given information" does not broaden the scope of "inquiry or proceeding;" it merely ensures that the provision of non-testimonial evidence, such as incriminating documents, in an inquiry or proceeding would also be protected. *Id.*

The *King* court looked to its previous decision in *Ball v. Memphis Bar–B–Q Co.*, a case in which it interpreted a very similar provision of the Fair Labor Standards Act, to determine the scope of "inquiry or proceeding." *King*, 337 F.3d at 427. In *Ball*, the plaintiff alleged that the defendant fired him for his anticipated refusal to testify in a threatened lawsuit. *Ball v. Memphis Bar–B–Q Co.*, 228 F.3d 360, 363 (4th Cir.2000). Ball argued that the term "proceeding" in the FLSA provision included "not only court proceedings but also procedures through which complaints are processed within a company." *Id.* The Fourth Circuit held that the type of "proceeding" required for liability under the FLSA retaliation provision "referred only to administrative or legal proceedings, and *not to the making of an intra company*

*complaint."* *King*, 337 F.3d at 427 (summarizing the court's holding in *Ball*). The *Ball* court explained that the terms "testify" and "institute" in the FLSA regulation both connote "a formality that does not attend an employee's oral complaint to his supervisor." *Ball*, 228 F.3d at 364. The court noted that while it must read the FLSA to "effectuate its remedial purposes," the statutory language of the FLSA provision "clearly places limits on the range of retaliation proscribed in the Act." *Id.*

Likewise, in *King*, the Fourth Circuit focused on the reporting formalities required by § 1140 and emphasized that "[n]owhere in the complaint does there appear any allegation that King testified in any proceeding, legal, administrative, or otherwise, or that she was about to testify." *King*, 337 F.3d at 427–28. It noted that "at best, King's complaint ... shows that King *only filed internal complaints* with some of her coworkers, her supervisor, and some of Marriott's attorneys, filings which do not bring her within the ambit of [§ 1140]" *Id.* at 428 (emphasis added). Therefore, the court held that none of her actions were protected under § 1140 and remanded the case. *Id.* The *King* court also considered cases from the Fifth and Ninth Circuits that held that § 1140 protects employees from discrimination for making internal ERISA complaints. *Id.* (citing *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311 (5th Cir.1994); *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir.1993)). The Fourth Circuit found the reasoning in both cases unpersuasive and held that "inquiry or proceeding" could not be fairly construed to extend to intra-office complaints. *Id.* The *King* court emphasized that it could not reject the most compelling interpretation of the statutory language "even if [it] preferred as a matter of policy the result

yielded by the broader interpretation." *Id.*

In her Opposition, Paasch argues that the Supreme Court's holding in *Kasten v. Saint–Gobain Performance Plastics Corp.* effectively overrules *King v. Marriott.* (Doc. 11, at 10). In *Kasten,* the Supreme Court analyzed the language "filed any complaint" contained in the FLSA retaliation provision. 563 U.S. 1, 12, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). The FLSA provision makes it unlawful:

> [T]o discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to this chapter, *or has testified or is about to testify in any such proceeding,* or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3) (emphasis added).

In *Kasten,* the Supreme Court focused on the phrase "filed any complaint" and concluded that FLSA protection could encompass oral as well as written complaints. 563 U.S. 1, 12, 131 S.Ct. 1325 (2011). Paasch argues that *Kasten* effectively overruled *King* because the court in *King* referenced its reasoning in *Ball,* which interpreted the term "proceeding" in FLSA's anti-retaliation provision. She argues that *Kasten* overrules *Ball* ; therefore, *King* is "effectively overriden." (Doc. 11, at 11). ERISA's retaliation provision, however, is starkly different from the FLSA's retaliation provision because ERISA does not include the language "filed any complaint." *See* 29 U.S.C. § 1140. Instead, § 1140 makes it unlawful for any person to discriminate against another because she has "given information" in an "inquiry or proceeding" related to an ERISA violation. *Id.* Thus, Paasch's reliance on *Kasten* is misguided because *Kasten's* holding turned on the Supreme Court's interpretation of the FLSA's broad and inclusive "filed any complaint" language, and here, ERISA's "inquiry or proceeding" language is much more narrow and specific. In addition, the Fourth Circuit in *Ball* analyzed the meaning of "proceeding" in the FLSA while *Kasten* analyzed whether an oral complaint could satisfy the language "filed any complaint." *Compare Ball,* 228 F.3d at 364, *with Kasten,* 563 U.S. at 7, 131 S.Ct. 1325. Therefore, *Kasten's* holding that an oral complaint may satisfy the FLSA retaliation provision does not undercut *King's* holding that information must be given in a legal or administrative inquiry or proceeding under ERISA's retaliation provision.

■■■ Under the Fourth Circuit's definition of "inquiry or proceeding," Paasch's reporting does not constitute giving information in an inquiry. Paasch alleges that she reported the ERISA violations to Brecht (her supervisor) and Gardner (her director) and that she spoke with the NRECA's ERISA attorney about the non-compliance issues. (Doc. 3 ¶¶ 19, 25, 27, 28, 29, 30). These internal reports do not meet the reporting requirements under ERISA's retaliation provision. Like the plaintiff in *King,* Paasch never alleges in her Amended Complaint that she testified or gave information in any proceeding, legal, administrative, or otherwise, or that she was about to testify. *See King,* 337 F.3d at 427–28. Paasch's assertion that her reports were in response to an "inquiry" simply because NRECA's Vice President and CCO requested that certain noncompliance issues be researched and addressed does not raise Paasch's internal reporting to the level of "any inquiry or proceeding" needed for protection under § 1140. In addition, part of Paasch's job as a Retirement Compliance Consulting Representative was to: (1) determine whether plans were in compliance with

DOL and IRS requirements, (2) test and analyze member plans, and (3) find and report ERISA and IRS noncompliance issues. Repeatedly labeling her supervisor's request as an "inquiry" does not convert her internal reports and performance of her occupational duties to an inquiry under § 1140 because the Fourth Circuit requires a legal or administrative inquiry or proceeding for protection under § 1140. *See King*, 337 F.3d at 427. Thus, mere conclusory statements such as these do not rise beyond the speculative level necessary to survive a 12(b)(6) motion to dismiss.

In oral argument, Paasch argued that 29 U.S.C. § 1140 allows "any person" to bring a retaliation claim and that, as the employees who discover noncompliance and report noncompliance to management, compliance representatives such as Paasch have the greatest need for protection under § 1140. However, Paasch could point to no cases specifically involving a company's retaliation against a compliance officer or representative for the performance of his or her duties. Additionally, *King* very clearly limits protection to persons who give information or testify in a legal or administrative proceeding, regardless of their role in the company. *See King*, 337 F.3d at 427. Paasch also argued before the Court that § 1140 protects information given in "*any* inquiry," and the purpose of ERISA—to protect an ERISA plan's participants and beneficiaries—is better served by a broad reading of "inquiry" in the retaliation provision. However, in *King*, the Fourth Circuit specifically addressed this issue and stated that it could not reject the compelling statutory interpretation—that "inquiry" specifically means a legal or administrative inquiry—for a broader, perhaps more "fair," interpretation. *King*, 337 F.3d at 428. Therefore, the Court finds Paasch's arguments unpersuasive.

Accordingly, the Court holds that Paasch's internal reports to her supervisor, director, and NRECA's in-house attorney do not meet the "inquiry or proceeding" reporting requirements necessary to bring a retaliation claim under § 1140. Thus, the Court GRANTS Defendant's Motion to Dismiss because Paasch fails to allege facts sufficient to state a claim for NRECA's violation of § 1140; therefore, she is not entitled to a cause of action under § 1132(a)(3).

## IV. CONCLUSION

First, the Court holds that Paasch fails to allege facts sufficient to state a claim under 29 U.S.C. § 1105(a) because she was not a fiduciary to the ERISA plans and because § 1105(a) does not give rise to a cause of action for her allegations. Second, the Court holds that Paasch fails to allege facts sufficient to state a claim under 29 U.S.C. § 1140 because her internal reports were not in relation to a legal or administrative inquiry. Thus, the Court holds that Paasch is not entitled to a cause of action under 29 U.S.C. § 1332(a)(3) because she does not allege facts sufficient to state a claim for a violation of either § 1105(a) or § 1140. Accordingly, Defendant's Motion to Dismiss is GRANTED.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 5) is **GRANTED without prejudice.**

**IT IS SO ORDERED.**